# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| LOGAN KNITTING MILLS, INC. and MICHAEL S. FELDMAN, | |
| Plaintiffs, | Case No. 04 C 7596 |
| v. | Hon. Harry D. Leinenweber |
| MATRIX GROUP LIMITED, INC., | |
| Defendant. | |

## MEMORANDUM OPINION AND ORDER

Following trial, a jury returned a verdict in favor of Matrix Group Limited, Inc. (hereinafter, "Matrix") and against Logan Knitting Mills, Inc. and Michael S. Feldman (hereinafter, collectively, "Logan") for $90,000.

Before the Court is Matrix's Motion for Attorney's Fees and Non-Taxable Expenses. This motion is granted in part and denied in part.

## I. BACKGROUND

This suit arose out of the breach of a contract (hereinafter, "the contract") governing the sale of Logan's mail order Wrestling Express merchandise division to Matrix. The parties each performed some of their contractual duties: Matrix made an initial payment of $182,000 and Logan gave Matrix its customer mailing list and business records. Logan then brought suit for $180,000 alleging that Matrix breached the agreement by failing to make the remaining

payments prior to the closing date.  Matrix counterclaimed for $182,000, alleging that Logan had breached the agreement by failing to ship the physical inventory by the contract deadline.  In essence, this case presented the following question:  was Matrix required to pay before Logan shipped the inventory, or vice versa.  The jury determined that Logan was to have shipped the inventory first, and awarded Matrix $90,000 in damages.

Now, Matrix seeks attorneys' fees and costs as provided by the contract.  The parties agree that Illinois law controls.

## II.  DISCUSSION

Matrix seeks $281,383.39 in attorneys' and paralegal fees, $20,035.96 in non-taxable costs, and $6,489.91 in taxable costs. The contract contained the following provision:

> In the event any party shall be required to commence any action or proceeding against the other party by reason of any breach or claimed breach of any provision of this Agreement, to commence any action or proceeding in any way connected with this Agreement, or to seek a judicial declaration of rights under this Agreement, the party prevailing in such action or proceeding shall be entitled to recover from the other party, or to be reimbursed, the prevailing party's actual attorney's fees and costs including, but not limited to, expert witness fees, witness fees, and any and all other fees and costs, whether or not the proceeding or action proceeds to judgment.  Agreement, ¶ 9.3

**A.  Is Matrix Entitled to Attorney's Fees and Costs?**

*1.  Interpretation of the Term "Required"*

Logan argues that this Court cannot grant any attorney's fees or costs on the basis of Paragraph 9.3 because Logan was not

"required" to bring suit. This argument does not pass the so-called "laugh test." A court must interpret a fee provision according to its plain meaning. *Bowles v. Quantum Chemical Co.*, 266 F.3d 622, 636 (7th Cir. 1999). Logan suggests that this Court interpret "required" to mean "mandated" or "directed" based on a Wisconsin case involving an interpretation of a tax statute. *Lincoln Sav. Bank, S.A. v. Wisconsin Dept. of Revenue*, 573 N.W.2d 522, 529 (Wisc. 1998). Because both parties agree that the contract specified that Illinois law applies and *Lincoln Savings* involves the interpretation of a tax statute rather than a fee provision, *Lincoln Savings* is irrelevant. Interpreting the clause in the manner urged would render the fees provision meaningless, as this Court cannot envision a scenario in which a party to a contract could be "mandated" or "directed" to file a lawsuit. It is an established cannon of contract interpretation that a Court should not interpret a contract clause in a manner that would render it meaningless. *Computer Sales Corp. v. Rousonelos Farms, Inc.,* 546 N.E.2d 761, 766 (Ill. App. Ct. 1989); *see generally Atwood v. St. Paul Fire and Marine Ins. Co.*, 845 N.E.2d 68, 72 (Ill. App. Ct. 2006). Instead, this Court interprets "require" to mean "compel" or "need." *Black's Law Dictionary*, 1990 Ed. Under this interpretation, the clause applies.

### *2. The Prevailing Party*

Logan next argues that Matrix is not the prevailing party, and is therefore not entitled to attorneys' fees or costs. A prevailing party under Illinois law is a party that "is successful on any significant issue in the action and achieves some benefit in bringing suit, when it receives a judgment in its favor, or when it achieves an affirmative recovery." *Tax Track Systems Corp. v. New Investor World, Inc.*, 478 F.3d 783, 789 (7th Cir. 2007) (quoting *Med+ Plus Neck and Back Pain Center, S.C. v. Noffsinger*, 726 N.E.2d 687, 694 (Ill. App. Ct. 2000)). A prevailing party need not win on all claims. *Powers v. Rockford Stop-N-Go, Inc.*, 761 N.E.2d 237, 240 (Ill. App. Ct. 2001).

This Court finds Matrix to be the prevailing party. The jury found for Matrix and against Logan, awarding Matrix $90,000. Matrix prevailed on its counterclaim against Logan for breach of contract *and* on Logan's affirmative claims against Matrix for breach of contract. The mere fact that Matrix did not recover all damages sought is not sufficient to render it non-prevailing. Thus, Matrix is entitled to attorneys' fees and costs.

### B. Attorneys' Fees

Having determined that Matrix is entitled to attorneys' fees and costs under the contract, this Court must consider what amount of attorneys' fees to award.

### *1. "Actual" or Reasonable Attorney's Fees*

Matrix argues that it is entitled to its "actual" attorney's fees ($281,383.39) as specified by Paragraph 9.3. Logan argues that this Court should interpolate a reasonableness requirement into the contract.

The Seventh Circuit has read a "reasonableness" requirement into contractual fee-shifting provisions. *See, Medcom Holding Co. v. Baxter Travenol Laboratories, Inc.*, 200 F.3d 518 (7th Cir. 1999); *Balcor Real Estate Holdings, Inc. v. Walentas-Phoenix Corp.*, 73 F.3d 150, 153 (7th Cir. 1996); *see also, e.g., Bock v. Computer Associates Intern., Inc.*, 2002 WL 511560 (N.D. Ill. 2002); *Zeidler v. A&W Restaurants, Inc.*, 2001 WL 561367 (N.D. Ill. May 21, 2001). Using a "commercial reasonableness" standard to evaluate the potential fee awards is designed to ensure that fees do not rise to "pie-in-the-sky numbers that one litigant seeks to collect from a stranger but would never dream of paying itself." *Medcom*, 200 F.3d at 520.

Matrix attempts to distinguish *Balcor*, *Medcom*, and their district court progeny on various bases. Although some of these cases involved one-way fee shifting provisions (where only one side stood to recover fees if it prevailed), the reasoning was not necessarily based on this fact. *See Medcom*, 200 F.3d 518; *Balcor*, 73 F.3d 150. These cases appear less concerned with the one-sidedness of the fee provision than with avoiding situations where

the potential for recovery of fees wag a dog of a case. This case seems to be a prime example of a situation where litigation strategy was tempered (if not controlled) by the potential for such recovery. That both sides were thus affected does not make it any less of an example. Thus, this Court will interpolate a reasonableness requirement. (To some extent, the merit of any supposed distinction is besides the point, as this Court finds that Matrix's fees expenditures were commercially reasonable.)

Logan argues that Matrix's fees outlay was not commercially reasonable considering that it was chasing a prize worth approximately $180,000. Logan, however, mischaracterizes what was at stake. Because Logan sued Matrix for $180,000 and Matrix had countersued for $180,000, this case was actually worth $360,000 – Matrix stood to lose as much as $180,000 or gain as much as $180,000. Additionally, both sides were aware that the non-prevailing party would be required to pay the prevailing party's attorney's fees, making the foregoing estimate of the case's worth somewhat conservative. In light of that estimate, $280,000 no longer sounds so unreasonable.

An additional indicia of reasonableness weighs in Matrix's favor: Matrix actually paid these fees. In *Medcom*, the Seventh Circuit noted that "if the bills were paid, this strongly implies that they meet market standards." *Medcom*, 200 F.3d at 520. Although Matrix undoubtedly hoped that it would prevail, and it

would eventually be reimbursed for these fees, it did pay them in the ordinary course of business. *See id.* (There appears to have been some contention by Logan that Matrix did not pay all of Tabet DeVito's fees, but this contention was not raised in Logan's motion and Matrix has included a declaration from Caesar A. Tabet confirming that Matrix did pay). Granted, this is not the end of the inquiry; if it were, then courts would be reading into contractual fee provisions a standard of "prepayment" rather than "reasonableness." *Zeidler*, 2001 WL 561367 at *2-3. But considering that this Court finds that $280,000 is a reasonable amount to spend considering that this suit was worth $360,000, it further weighs in favor of finding the fees reasonable.

Logan argues that this Court should cap Matrix's fees at $100,000 because Matrix refused to settle when both parties had expended approximately $100,000 in fees. This argument is significantly undercut by the fact that Logan itself spent $167,000 in attorneys' fees and does not appear to argue these fees were unreasonable. As Matrix points out, furthermore, settlement discussions between the parties were supposed to be confidential.

### *2. Logan's Additional Objections*

Logan also argues that Matrix's attorney's fee award should be reduced for specific reasons. First, Logan argues that this Court should reduce the fees by 50% because Matrix only recovered 50% of the result it sought. When reviewing a fees request pursuant to a

fee-shifting statute, a court may (but need not) reduce a fee award based on partial success. *Hensley v. Eckerhart*, 461 U.S. 424, 434-435 (1983). Courts consider whether the prevailing party achieved a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award. *Id.* at 434. Matrix achieved a level of success that makes the hours expended reasonable. Logan has again based its argument on an underestimate – Matrix in fact succeeded in winning Logan's suit and was awarded one half of its sought damages on its counterclaim.

Second, Logan argues that this Court should lower Matrix's requested fees by approximately $20,000, the amount spent preparing an unsuccessful motion for summary judgement and Matrix's unsuccessful attempt to amend its counterclaim to add additional claims shortly before trial. Courts regularly award fees generated by unsuccessful motion practice. *See, Berthold Types Ltd. v. Adobe Systems, Inc.,* 186 F.Supp.2d 834, 840 (N.D. Ill. 2002); *Wengryn v. Connor Sports Flooring Corp.*, 2002 WL 2022608 at *4 (N.D. Ill. Sept. 3, 2002). Although the legal theory espoused in the summary judgment motion was later abandoned, it does not appear to have been "unnecessary," as Logan claims. Instead, the motion was denied because the contract was ambiguous. Additionally, this Court initially granted Matrix's motion to amend its counterclaim. While the amendment was later stricken, it was likewise not frivolous.

Third, Logan argues that the requested fees should be reduced due to various issues involving Matrix's decision to obtain new counsel. Following summary judgment, Matrix terminated Tabet DeVito and retained the Brann firm from Maine (with the Iwan firm as local counsel). Logan objects to $15,068.50 charged by the Brann firm to transition into the case. This Court will reduce the awarded fees by that amount; Matrix's decided to change firms mid-suit and Logan should not bear the cost of the resulting duplication of effort. *Cf. Ackerly Communications of Massachusetts, Inc. v. City of Somerville*, 901 F.2d 170, 171 (1st Cir. 1990). However, this Court believes that as out-of-state defendants, Matrix had the right to retain out-of-state counsel. While there are capable attorneys in Chicago, the $7,811.77 charged by the Iwan firm as local counsel does not seem unreasonable and Logan's only cited case is distinguishable. *See Quint v. A.E. Staley Mfg. Co.*, 245 F.Supp.2d 162, 180 (D. Maine, 2003) (local counsel's efforts not necessary where plaintiff was not out-of-state). Matrix is thus awarded the sum of $266,314.89 in attorneys' fees.

### C. Costs

Logan does not object that Matrix is entitled to recover costs under Paragraph 9.3 of the agreement. Because Paragraph 9.3 provided that Matrix could recover "costs" and "any and all other . . . expenses," furthermore, Matrix is entitled to recover

costs that would not normally be allowed under Illinois law governing fee awards. *See Medcom*, 200 F.3d at 520.

### 1. *Non-Taxable Costs*

Matrix seeks an award of $20,035.96 in non-taxable costs. Logan objects to the extent that some of these costs were charged as a 3% surcharge by the Brann firm for general overhead, in-house copying costs, telephone, postage, and faxes (Logan mischaracterizes these charges in its brief). This Court does not believe that a 3% surcharge for these costs is unreasonable and will not disturb the non-taxable cost award for this reason. The cases cited by Logan in support of its contention all concern statutory fee-shifting provisions, where cost requests are reviewed under a higher-magnification microscope than if contractual provisions were involved. *See Medcom*, 200 F.3d at 520-21. As such, this Court need not evaluate the necessity and reasonableness of each copy job, and need not have been provided with this information. *Id.*; *Bock*, 2002 WL 511560. The aggregate costs do not appear unreasonable; as such, Matrix is awarded $20,035.96 in non-taxable costs.

### 2. *Taxable Costs*

Logan objects to several taxable costs, including $185 supposedly sought for copying inadmissible documents, $718.39 for a copy job for which no description was given, and approximately $580 for creating notebooks that might not have been used at trial.

As noted above, under *Balcor, Medcom,* and their progeny, this Court is not supposed to scour the record with a fine-toothed comb but merely to determine if the fees and costs assessed were reasonable. *See id.* Neither the aggregate taxable costs ($6,489.91) nor these particular costs appear unreasonable, and the Court grants them.

### D. Post-Judgment Interest

Matrix additionally requests post-judgment interest on the award of fees and costs in accordance with 28 U.S.C. § 1961. Logan does not dispute that § 1961 provides for an award of post-judgment damages interest in all federal cases (including diversity cases). *Gorenstein Enterprises, Inc. v. Quality Care-USA, Inc.*, 874 F.2d 431 at 436-37. Awards of attorneys' fees and expenses are subject to post-judgment interest. *Dalton v. Jones, Bird & Howell*, 993 F.2d 1549, at *5 (7th Cir. 1993); *Transpower Constructors, a Div. of Harrison Intern. Corp. v. Grand River Dam Authority*, 905 F.2d 1413, 1423 (10th Cir. 1990); *Institutionalized Juveniles v. Secretary of Public Welfare*, 758 F.2d 897, 927 (3d Cir. 1985); *Harris v. Chicago Great Western Ry. Co.*, 197 F.2d 829, 836 (7th Cir. 1952). Logan does not contest that Matrix is entitled to post-judgment interest on fees and expenses incurred prior to judgment ($264,137.43) as of the date of that judgment, January 10, 2007, because its entitlement to fees was clear as of that date. *See, Jenkins by Agyei v. Mo.*, 931 F.2d 1273, 1276 (8th Cir. 1991).

As for fees and expenses incurred post-judgment ($28,703.33), interest will be calculated beginning on the date of this Order.

Neither party has attempted to guide this Court regarding the calculation of the post-judgment interest. Interest pursuant to §1961(a) is calculated "at a rate equal to the weekly average one-year constant maturity Treasury yield for the calendar week preceding the date of the judgment, as published by the Board of Governors of the Federal Reserve System." *Chemetall GMBH v. ZR Energy, Inc.*, 2001 WL 1104604 at *21 (N.D. Ill. Sept. 18, 2001); 28 U.S.C. § 1961(a). The interest should be computed daily until the date of payment, and should be compounded annually. *Id.*

The weekly average one-year constant maturity Treasury yield for the calendar week ending January 5, 2007 was 4.98 percent. Accordingly, the daily rate of post-judgment interest on fees and expenses incurred before judgment amounts to 0.0492/365. The daily rate of interest on the fees and expenses incurred prior to January is thus $36.0385 ($264,137.43 * .0498/365). As of June 1, 2007, 142 days after Matrix became entitled to attorneys' fees, the accrued post-judgment interest is $5,116.03 (calculated based on the formula P(r/365*d), P being the principle, r being the interest rate, and d being the number of days). *See Chemetall*, 2001 WL 1104604 at *21 (noting that using the formula gives a slight different answer than if the *per diem* rate were used to calculate the total interest).

The weekly average one-year constant maturity Treasury yield for the calendar week ending May 25, 2007 was 4.95 percent. Thus, the daily rate of post-judgment interest on fees and expenses incurred post-judgment in this case amounts to 0.0495/365. The daily rate is thus $3.8922 ($28,703.33 * .0495/365).

### III. CONCLUSION

For the reasons stated herein, Matrix's Motion for Attorney's Fees and Expenses in granted in part and denied in part as follows:

1. Matrix is awarded $266,314.89 in attorneys' fees, $20,035.96 in non-taxable costs, and $6,489.91 in taxable costs.

2. Additionally, Matrix is granted post-judgment interest on its award of attorneys' fees and costs:

    a. Matrix is granted $5,116.03 in post-judgment interest that accrued between January 10, 2007 and June 1, 2007 on its attorneys' fees and expenses incurred prior to the January 10, 2007 judgment; and

    b. Post-judgment interest shall continue to accrue on Matrix's attorneys' fees and expenses incurred prior to the January 10, 2007 judgment (beginning June 2, 2007) and begin to accrue on the attorney's fees and expenses incurred post-judgment as of the date of this Order.

**IT IS SO ORDERED.**

                                              Harry D. Leinenweber, Judge
                                              United States District Court

**DATE:** June 1, 2007